**STATE OF WEST VIRGINIA**

**FILED**

March 19, 2021
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Petitioner**

vs.)    No. 19-0981 (BOR Appeal No. 2054216)
                    (Claim No. 2016004423)

**CAREY FITZWATER,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Murray American Energy, Inc., by counsel Denise D. Pentino and Aimee M. Stern, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Carey Fitzwater, by counsel Reginald D. Henry, filed a timely response.

The issue on appeal is permanent partial disability. The claims administrator granted no permanent partial disability for Mr. Fitzwater in an Order dated January 19, 2018. On April 23, 2019, the Workers' Compensation Office of Judges ("Office of Judges") reversed the claims administrator's decision and granted a 26% permanent partial disability award. This appeal arises from the Board of Review's Order dated September 24, 2019, in which the Board affirmed the Order of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Fitzwater, while employed as a mine foreman, sustained an electrocution-type injury on August 11, 2015, when he inadvertently came into contact with a trolley wire carrying 300 volts of electrical current. He immediately sought treatment at Wheeling Hospital with complaints of pain in the neck, back, arm, and chest wall. He was also experiencing numbness, burning sensations in his left arm, tremors, and anxiety. A chest x-ray, head CT scan, brain CT scan, EKG and cervical spine CT scan were performed, and all diagnostic testing was normal. Hospital personnel made a primary diagnosis of injury of the face and neck, and secondary diagnoses of

1

painful respiration, abnormal involuntary movement, lumbago, and pain in the limb. Mr. Fitzwater was discharged from the hospital and advised to follow-up with a provider at Corporate Health.[1]

Mr. Fitzwater treated with Ross Tennant, Family Nurse Practitioner, on August 12, 2015. He reported that he had already returned to full duty work. He complained of numbness and tingling in his left hand, which was improving. The impression was electrical exposure. Mr. Fitzwater was allowed to continue to work full duty without restrictions. Mr. Fitzwater followed up with Nurse Tennant on August 17, 2015, reporting continued improvement in the numbness and tingling in his left hand. He complained of headaches after completing long shifts at work. Mr. Fitzwater denied neck pain, blurred vision, and any episodes of dizziness, angina, or heart palpitations. Nurse Tennant released Mr. Fitzwater from his care.

On September 21, 2015, Mr. Fitzwater was admitted to Raleigh General Hospital with complaints of seizures and chest pain. He underwent an MRI, which was within normal limits. A brain CT scan showed a 5.0 mm left cavernous sinus enhancing mass, possibly a schwannoma or meningioma, but was otherwise normal. Giorgianna Richards, M.D., a neurologist, was consulted, and she prescribed medication. Mr. Fitzwater was discharged from the hospital on September 25, 2015, with discharge diagnoses of status post electric shock, seizure disorder, hypertension, non-cardiac chest pain, and subtle mass within the left cavernous sinus.

By Order dated October 2, 2015, the claims administrator held the claim compensable for injury of the face and neck on a no-lost-time basis. The conditions of painful respiration, hypermobility syndrome, lumbago and abnormal involuntary movements were specifically found to be not compensable in the claim.[2]

Bobby Miller, M.D., conducted an independent psychiatric examination on Mr. Fitzwater on April 24, 2017. Dr. Miller noted that he was called into the testing suite by the psychometrician because Mr. Fitzwater had become unresponsive during testing. Dr. Miller reported that he began shaking his head in a "yes/no" manner and he was clenching his eyes shut. When his name was called, Mr. Fitzwater began shrugging his shoulders in a slow rhythm. Dr. Miller described the situation as being a pseudo seizure. While it was Dr. Miller's impression that the episode was consistent with conversion disorder, he also stated that malingering must be considered given Mr. Fitzwater's performance during testing.

Mr. Fitzwater was admitted to Ruby Memorial Hospital on May 26, 2017, to undergo EED seizure monitoring. He reported one episode overnight during which he experienced a headache.

---

[1] The Report of Injury was filed in this claim on August 13, 2015. The healthcare provider's portion of the Report was completed by Wheeling Hospital ER personnel, who listed the compensable diagnoses as injury of the face and neck, pain in limb, lumbago, abnormal involuntary movements, and painful respiration.

[2] By Orders dated September 7, 2016, and October 24, 2016, the claims administrator added post-traumatic seizures, electrocution, and hemiplegia affecting the left dominant side to this claim as secondary conditions.

The assessment was seizure. However, no shaking was documented by the EEG. Despite the physician's recommendation that he remain hospitalized, Mr. Fitzwater left the hospital after one night. The neurology progress note from the following day states, "patient had multiple non-epileptic events of whole body shaking yesterday afternoon."

Mr. Fitzwater was examined by Glenn Goldfarb, M.D., a neurologist, on July 26, 2017. During the examination, Mr. Fitzwater denied any prior history of seizures or fainting. He also reported depression has been present since the injury. Dr. Goldfarb noted that he was not working and that his diagnosis is as Dr. Miller listed, which is conversion disorder. Regarding whether he had reached maximum medical improvement, Dr. Goldfarb stated that he did not believe that Mr. Fitzwater had a true neurologic injury, and he would defer whether personality disorder and conversion disorder could be treated through psychiatry.

Mr. Fitzwater was re-evaluated by Dr. Goldfarb on December 20, 2017, with complaints of seizures, headaches, nightmares, trouble sleeping and left side weakness. On exam, Dr. Goldfarb found evidence that he was feigning left-side weakness. It was noted that Mr. Fitzwater was taking anti-seizure medications. Dr. Goldfarb found it significant that the Wheeling Hospital ER records from the date of injury documented no findings that would substantiate a significant injury, such as entry/exit wounds or joint injuries. Dr. Goldfarb concluded that Mr. Fitzwater was experiencing pseudo seizures or non-epileptic seizures and noted that his conclusion was confirmed by spells captured in the Epilepsy Monitoring Unit on video and EEG without electrographic epileptic brain activity. Dr. Goldfarb concluded that the discrepancies in the case suggest non-organic disease and that Mr. Fitzwater does not have a true neurologic injury. He opined that Mr. Fitzwater sustained no permanent impairment as a result of his compensable injury.

On January 19, 2018, the claims administrator granted Mr. Fitzwater no permanent partial disability award based on the medical report of Dr. Goldfarb. Mr. Fitzwater protested the claims administrator's decision. By separate Office of Judges decision dated February 23, 2018, the September 6, 2017, Order of the claims administrator, insofar as it denied as compensable conditions major depressive disorder and posttraumatic stress, was modified. It was Ordered that the conditions of major depressive disorder and posttraumatic stress be held as compensable components of the claim. The September 19, 2017, Order of the claims administrator closing the claim for temporary total disability benefits was reversed, and the claim was remanded for a determination of temporary total disability regarding all of the compensable conditions in the claim.

On June 4, 2018, Mr. Fitzwater was evaluated by Bruce A. Guberman, M.D., whose impression of his condition was history of electrocution injury, posttraumatic seizures, and left-sided hemiparesis. Dr. Guberman noted that he underwent EEG video monitoring at West Virginia University on May 5, 2018. He was noted to have multiple events with no EEG changes, and his seizures were not felt to be epileptic in nature. Although Mr. Fitzwater's seizures were considered non-epileptic seizures, Dr. Guberman opined that the condition qualifies for an impairment rating under Table 5 of the American Medical Associations *Guides to the Evaluation of Permanent Impairment*, (4th ed. 1993). He stated his opinion that Mr. Fitzwater's seizures are not malingering nor conversion reaction, but rather non-specific seizures as diagnosed by Dr. Goldfarb. He stated

3

that this is also consistent with the video EEG five-day report from Ruby Memorial Hospital. He stated that Mr. Fitzwater falls into the category "Paroxysmal disorder that interferes with some activities of daily living." Dr. Guberman identified 22% whole person impairment for paroxysmal disorder, 3% for headaches, 3% for left arm weakness, and 3% for left leg weakness. Using the Combined Values Chart of the AMA *Guides,* Dr. Guberman found 28% whole person impairment.

In support of his protest, Mr. Fitzwater submitted the August 18, 2018, report of Robert B. Walker, M.D., a Board-Certified Specialist in Occupational Medicine. Dr. Walker identified 27% whole person impairment attributable to the compensable injury. Dr. Walker assigned 22% for paroxysmal disorder that interferes with activities of daily living. He also found that Mr. Fitzwater requires regular medication requiring surveillance and associated with side effects resulting in 3% whole person impairment. Because his condition involves a loss of some dexterity, Dr. Walker recommended 4% whole person impairment for upper extremity impairment.

In a Final Decision dated April 23, 2019, the Office of Judges reversed the January 19, 2018, Order of the claims administrator. The Office of Judges granted Mr. Fitzwater a 26% permanent partial disability award in the claim.[3] Dr. Guberman's report was found to be the most persuasive medical evidence regarding whole person impairment. Dr. Guberman determined that Mr. Fitzwater has 28% whole person impairment; however, he included 3% for headaches, which has been denied as a compensable condition. On September 24, 2019, the Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed the granting of a 26% permanent partial disability award.

After review, we agree with the decision of the Office of Judges, as affirmed by the Board of Review. The Office of Judges found that Mr. Fitzwater's significant electrocution exposure supports the existence of 26% impairment. Given that Dr. Guberman considered the extent of Mr. Fitzwater's compensable conditions, the Office of Judges did not err in relying upon Dr. Guberman's recommendation in determining that Mr. Fitzwater is entitled to a 26% permanent partial disability award.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board of Review's findings, reasoning and conclusions, there is insufficient support to sustain the decision. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

---

[3] The award included 22% impairment for episodes of loss of consciousness; 3% for station and gait impairment due to left leg weakness; 3% for left arm weakness; and, 0% for cervical spine impairment. After utilizing the Combine Values Chart, the Office of Judges granted Mr. Fitzwater a 26% permanent partial disability award.

4

**ISSUED: March 19, 2021**

**CONCURRED IN BY:**
Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton